**Dean KELCHNER, Administrator ad Prosequendum of the Estate of Katherine Kelchner, et al., Plaintiffs,**

**v.**

**INTERNATIONAL PLAYTEX, INC., a Delaware Corporation, Defendant.**

**Civ. No. 84–1462.**

United States District Court, M.D. Pennsylvania.

April 6, 1987.

Scott Williams, Williamsport, Pa., Benjamin N. Cittadiono, Pellettieri, Rabstein & Altman, Trenton, N.J., for plaintiffs.

Timothy E. Foley, Bour Gallagher Foley & Cognetti, Scranton, Pa., McGuire Woods & Battle, William H. Robinson, Jr., Adele Baker, Richmond, Va., for defendant.

## MEMORANDUM AND ORDER

KOSIK, District Judge.

This is an action in tort filed some years after a young woman allegedly died of toxic shock syndrome as a result of using the defendant's product. The complaint was filed in October 1984. An early scheduling order provided for discovery to be completed in February, 1985. Progress in this litigation has been literally strangled with controversy over discovery. This is evidenced by allegations and a myriad of exhibits in the form of motions and other communications between counsel; no particularization is required. In fairness, fault must be shared by both sides in the litigation.

It appears that documents are important to the plaintiffs' case to show that the tampons produced and sold by the defendant caused TSS, and that the defendant was aware of the hazard associated with its product but did little about the condition until well over a year after the death of plaintiff's deceased.

Sometime in May 1986 defendant made known its intention to claim privilege with respect to thousands of its documents. Plaintiff sought an index of the privileged documents. In the interim controversy continued over the inspection of unprivileged documents.

Defendant provided the promised index to the claimed privileged documents in October 1986. Plaintiff filed a motion to compel Playtex to produce the documents on the index or in the alternative to have a master appointed to examine the documents and to review plaintiffs' challenge to the privilege. It must be noted that at this point a pretrial conference had been scheduled for the end of October 1986 and trial was anticipated soon thereafter. Plaintiffs' motion to compel alleged that the documents approximated 12000 in number and that the index consisted of 1300 pages. In support of their motion plaintiffs claimed that Playtex pursued a policy to secrete damaging documents to avoid their disclosure to an adversary. They alluded to a memorandum attributable to a Leonard Beiger, Director of Consumer Affairs for Playtex with references to house counsel dated May 3, 1977. By Memorandum and Order dated December 30, 1986, following another delay occasioned by counsel, we instructed as follows:

Plaintiffs' counsel seeks production, or, in the alternative, wants the court to appoint a master to examine the documents to determine relevance or the existence of a privilege which is claimed by the defense. Neither course will be directed at this time.

This is a case in which plaintiff is entitled to as much knowledge concerning the defendant's product as would help in establishing the burden of proof required in a product liability case. While it is essential for discovery to serve as one vehicle for providing this information, it does not mean, as the law recognizes, that a defendant is obliged to advocate a case for the plaintiff. Where, as here, the breadth of a defendant's operations are so extensive as to generate the voluminous material which may or may not be the subject of unprivileged evidentiary value, we believe it incumbent on those most knowledgeable to exercise a common sense approach to the resolution of conflicts. It ill behooves a plaintiff's counsel to say we want to see everything, regardless of privilege or confidentiality; and it ill behooves a defendant's counsel to simply file a descriptive index and then manifest cooperation.

We are confident that trial counsel fully understand what is essential and also that which is not the subject of discovery. Accordingly, we direct that trial counsel, or their delegates of a comparable level of experience, meet with the necessary employees of the defendant to review the index, and where essential the documents, to determine what is relevant and informative, as opposed to that which is clearly privileged for reasons assigned by the defendant.

On January 29 and 30, 1987 counsel for the respective parties met to implement our instructions. This effort ended in frustra-

tion. Plaintiff's counsel has maintained that the extensive privilege index provided by Playtex is inadequate on its face to disclose sufficient information to satisfy the burden of one claiming a privilege. Accordingly, they sought to examine individuals who were party to documents. On January 29, 1987 Ronald B. Gordon, General Manager and Senior Vice-President for Playtex was examined. In response to questioning he asserted that he was not familiar with the index. Plaintiffs' counsel explained that the purpose of her inquiry was to inquire about documents, their subject contents and source of preparation to identify if they were indeed legitimate subjects of privilege. When asked if he reviewed the index with anyone the witness was instructed not to answer. Defendant's counsel forgot that they bear the burden of proving the applicability of the privilege to the information plaintiffs seek. *Gulf Oil Corp. v. Schlesinger*, 465 F.Supp. 913, 916 (E.D.Pa.1979). In continuing pursuit plaintiffs' counsel inquired if third parties were privy to the information. At one point the witness was familiar with the document but had no independent memory.

The following day, January 30, 1987, Dr. Irwin Butensky, Playtex Research and Development, was questioned. An example of this inquiry is reflected in the questioning about Document ID No. 36, dated August 12, 1985, indicating its authors to be the witness and a Fleming. The recipient was an Ortner. The subject matter indicated was a "transmittal within law department of TSS research proposal: attached latter and proposal re: Same." The witness said he did not know the co-author Fleming, and never heard the name in context with Playtex. He had no knowledge concerning the memo. When asked if he directed that it be a confidential document he was instructed not to answer. Similar responses were received when Dr. Butensky was questioned about another document he authored. Plaintiffs' counsel followed a set pattern of inquiry in testing whether the privilege of lawyer and client existed or may have been waived. Essentially, this line of inquiry was patterned after the often approved criteria established by Judge Wyzanski in *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.C.Mass.1950) and recognized in the Third Circuit. *See In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir.1979). The authorities hold that a party has a right to inquire for the purpose of determining if the basis for privilege exists. The procedure was employed by plaintiffs' counsel with several witnesses over a period of two days without success.

On January 28, 1987 plaintiffs' counsel first learned of the existence of an additional 250 boxes of documents which defendant allegedly discovered in August 1986. While it is correct that plaintiffs' counsel first acquired the information of this discovery from sources other than the defense, we believe the failure to inform was inadvertent. Be that as it may, trial was again continued as a result of the disclosure. However, plaintiffs renewed their motion to compel production of all of the documents, to wit, the original 12000 plus those whose existence was first learned of by plaintiffs at the end of January 1987.

A hearing was scheduled on February 9, 1987. At the outset counsel reached some accommodation with respect to the recently disclosed documents. The 250 boxes were reduced to 219 boxes. Except for 29 boxes, which were to be the subject of a lawyer-client or work product privilege, defendants would allow an examination of the remaining boxes subject to a non-waiver stipulation; the latter insuring the defense right to claim a privilege notwithstanding an examination of the document or documents by plaintiffs' counsel. As to the 29 boxes to which a privilege has been asserted, the defense was to provide an index comparable to that provided with respect to the 12000 documents previously disclosed. We urged that the accommodation reached be extended to all documents. The suggestion was declined by the defense because it would, in their view, compromise the privilege. We continue to believe that it would

create no more compromise than the examination of documents subject to a non-waiver stipulation.

██ We want to reaffirm our belief that under our Memorandum of December 30, 1986, we directed nothing more than to have counsel for both sides sit with the index and documents, and to exchange information responsive to questions similar to those plaintiffs sought to propound on January 29 and 30, 1987. Such information if provided by the defendants would establish an intelligent basis for claiming a privilege; a burden which is placed on the party seeking privileged status. It would also provide an intelligent basis for ruling on plaintiffs' objections. We made it clear that there was no aversion to providing a neutral voice once people had an opportunity to examine the documents in the context suggested by the court. We have carefully examined portions of the privilege index provided by the defense. While patience and application could be relied upon to make an in camera examination and ruling on the applicability of the privilege in a reasonable number of cases, it would strain patience and reason to ask the court or its delegate to examine and rule under the circumstances and volume of documentation present in this case. Submitting a batch of documents to the court in camera does not provide an adequate or suitable substitute for complying with production. Often courts are without information to know what a document concerns, or whether the privilege should be sustained. In addition to description, an index should contain precise and certain reasons for preserving confidentiality or privilege. *International Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 94 (D.Del.1974). These very circumstances prompted our ruling at the conclusion of the hearing on February 9, 1987 requiring both counsel to go over each document and to identify them for an appropriate ruling by the court. It is this ruling that defendant requests us to reconsider.

As an alternative, the defense proposes that we modify our instruction and order to provide for "a meeting by counsel for the parties. Defense counsel will provide plaintiffs' counsel with any further facts pertaining to individual documents, short of communicating the privileged portions, without an actual inspection of the documents by plaintiffs' counsel. This procedure would enable plaintiffs to determine whether they wish to challenge the claim of privilege as to specific documents. Defendant requests that the court require plaintiffs' counsel to advise the court which specific documents plaintiffs wish to challenge and the basis for each such challenge." *Defendant's Memorandum in support of motion for reconsideration of Order of February 9, 1987, page 34-4.*[1]

If we understand the defense alternative to mean that they are prepared to sit and examine each document to which the claimed privilege is too cryptic or unclear, then the alternative represents the court's instruction and sentiments of December 30, 1986, as stated earlier. It will enable the defendant's representative or counsel to more completely state the reason for the claimed privilege as opposed to the cryptic reasons offered in the index. It will also enable plaintiff to query counsel and/or a representative of the defendant to test the claimed privilege as is permitted under existing case law. And, it would present the court with an intelligent record upon which to rule.

Both sides have extensively briefed their respective positions. We are persuaded by the plaintiffs' position. However, we shall amend our Order to comport with the suggested modification of the defendant Playtex. If it is deemed unacceptable by Playtex, we shall stand on the Order of February 9, 1987.

---

**1.** With respect to the 12000 documents, plaintiffs' counsel represents she is prepared to review all documents as quickly as possible. *Letter of March 10, 1987.* With respect to the 29 boxes of recently discovered documents, both counsel can similarly expedite a review under the modification proposed by Playtex.

If the Order of February 9, 1987 is to prevail, we hereby deny certification of our ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Our reasons for denial are [1] the privilege as it exists has been improperly asserted because of its inadequacy; [2] because we believe the privilege was improperly asserted and has contributed to inordinate delay, we do not feel a substantial ground for a difference of opinion exists; and [3] certification will result in further delay and contribute to, rather than avoid protracted and expensive litigation.

### ORDER

NOW, this 6th day of April, 1987, IT IS HEREBY ORDERED THAT: the court's Order of February 9, 1987 is modified to be in accord with the modification proposed by the defense as discussed in the accompanying Memorandum.

Further, that a rejection by the defense of the modification will reinstate the Order of February 9, 1987.

Further, in the event the Order of February 9, 1987 is reinstated by reason of the defendant's rejection of the modification, then the motion for certification pursuant to 28 U.S.C. § 1292(b) is denied.

William H. Cox, Jr., Cox & Dunn, Ltd., Jackson, Miss., for plaintiffs.