**PETE RINALDI'S FAST FOODS, INC.,
t/a Pete Rinaldi's Fried
Chicken, Plaintiff,**

v.

**GREAT AMERICAN INSURANCE COMPANIES, t/a American National Fire
Insurance Company, Defendant.**

**No. C–88–466–D.**

United States District Court,
M.D. North Carolina,
Durham Division.

Nov. 4, 1988.

R. Hayes Hofler, III, Malvern F. King, Jr., Durham, N.C., for plaintiff.

George W. Miller, Jr., Durham, N.C., for defendant.

## ORDER

RUSSELL A. ELIASON, United States Magistrate.

Plaintiff moves for an order compelling defendant to produce documents in its First Request Nos. 3, 5, and 6.[1] This suit arises from plaintiff's claim that the defendant insurance company is guilty of bad faith failure to settle plaintiff's first party claim on a $20,000.00 fidelity insurance policy. Plaintiff makes the following allegations.

Plaintiff operated a retail food establishment and obtained an insurance policy protecting it against the dishonest acts of its employees. Through a private investigator, plaintiff learned that two employees had embezzled food and merchandise to the extent of $26,000.00. In October 1985, plaintiff made a claim for the losses. Defendant quickly paid a $4,500.00 claim with respect to employee Walker but did not act upon the larger $21,500.00 loss with respect to employee Hargroves. Defendant's president initially indicated in the fall of 1985 that the larger claim had been substantiated. However, in the spring of 1986, defendant informed plaintiff that there was not sufficient documentation for the larger claim even though more documentation was submitted for the larger claim than for the smaller one. Because the Hargroves claim went unpaid, plaintiff had to seek Chapter 11 protection from the United States Bankruptcy Court. Finally, after the attorney in bankruptcy demanded payment and the passage of two years, defendant tendered the policy limits on the Hargroves claim without receiving additional documentation.

The request for production of documents seeks both the Walker and Hargroves claims files from December 1985 through present, and all communications made by or to defendant with respect to the claims. Defendant asserts that the files are entitled to work product protection pursuant to Fed.R.Civ.P. 26(b)(3). It has submitted a sealed package of the documents for *in camera* review. A cursory review of these documents indicate they contain matters from 1985 through 1987. Much of the information in the Hargroves file provides reasons why defendant's adjustors did not settle the claim. It also includes documentation and defendant's investigation and evaluation efforts. The Hargroves claims file contains at least one communication with outside counsel.[2]

Relying on both federal and state cases, defendant requests that the Court protect the claims files from disclosure or only order discovery to the extent plaintiff makes a showing of entitlement and then, only to the extent it is not duplicative of matters which defendant has already produced in responding to other discovery requests. Plaintiff asserts that as a general rule the complete insurance company claims file, including an attorney's opinion work product, may be discovered in an

---

1. Plaintiff had also requested a motion compelling answers or further answers to certain interrogatories. Thereafter, defendant filed its reply brief resisting production of the documents but submitting answers to the interrogatories. In its reply, plaintiff does not press the motion with respect to the interrogatories and, therefore, the Court concludes it to be moot and it shall, therefore, be denied.

2. This took place in the fall of 1987 when plaintiff's bankruptcy attorney contacted defendant concerning the claim. Some months later, defendant offered the policy limits which plaintiff returned claiming defendant was required to pay interest and an additional amount for the bad faith failure to settle the claim. Thereafter, defendant procured outside counsel.

action alleging bad faith failure to settle the claim.

*Discussion*

■ In determining questions involving work product protection, federal courts apply federal law, even in diversity cases. *United Coal Companies v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir.1988). Decisions concerning work product are not governed by Federal Rules of Evidence 501 which mandates the application of state law with respect to determination of testimonial or evidentiary privileges in diversity cases. The work product doctrine is designed to protect "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed.2d 451 (1947). Work product is not a privilege within the meaning of Rule 501 which protects the sanctity of confidential communications. Rather, it is a tool of judicial administration, borne out of concerns over fairness and convenience and designed to safeguard the adversarial system, but not having an intrinsic value in itself outside the litigation arena. *See Great American Surplus Lines Ins. v. Ace Oil Co.*, 120 F.R.D. 533, 539 (E.D.Cal.1988); *see also In re Underwriters at Lloyd's*, 666 F.2d 55, 57–58 (4th Cir.1981); *Miller v. Haulmark Transport Systems*, 104 F.R.D. 442 (E.D.Pa.1984); and 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2025 at 212 (1970)— (work product may be more accurately described as providing an immunity as opposed to a privilege for confidential communications).

■ Because work product protection, like that provided by evidentiary privileges, hinders the investigation of truth by cloaking otherwise relevant information, its scope should likewise be given the narrowest construction consistent with its purpose.[3] *In re Grand Jury Proceedings*, 604 F.2d 798, 802–03 (3d Cir.1979); *United States v. 22.80 Acres of Land*, 107 F.R.D. 20 (N.D.Cal.1985). Furthermore, the party requesting protection bears the burden of proving entitlement to work product protection by making an evidentiary showing, if necessary. *Binks Mfg. Co. v. Nat. Presto Industries, Inc.*, 709 F.2d 1109, 1120 (7th Cir.1983).

In order to place documents under the mantle of Rule 26(b)(3) for work product protection, a proponent must establish that the documents satisfy three criteria. The material must be: (1) documents or tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for the party or the party's representative. *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024 at 196–97 (1970 and 1988 Supp.). In the instant case, the claims files satisfy the first and third criteria. The only issue is whether any of the documents were prepared in anticipation of litigation or for trial.

■ In determining whether a document was prepared in anticipation of litigation, a good starting point is to ask the question of whether,

> in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of the litigation.

8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024 at 198–99 (1970). The federal cases determining whether insurance companies claims files constitute work product have not been entirely consistent. On one extreme, lie the decisions which do not grant protection unless the insurance company has turned the matter

---

**3.** Privileges narrowly construed. *United States v. Zolin*, 809 F.2d 1411, 1415 (9th Cir.1987), *modified on other grounds*, 842 F.2d 1135 (9th Cir.1988)—(en banc); *see U.S. v. Suarez*, 820 F.2d 1158 (11th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 505, 98 L.Ed.2d 503 (1987); and *United States v. (Under Seal)*, 748 F.2d 871, 875 (4th Cir.1984), *appeal after remand*, 757 F.2d 600 (4th Cir.1985)—(attorney-client, controversy dismissed as moot).

over to an attorney for the purpose of litigation. On the other extreme, some courts have determined that the insurance company's initial investigation of an accident or claim is almost always done with one eye focused on a probable prospect of litigation. This Court agrees with those increasing number of courts which reject these extremes and decide the matter on a case-by-case basis. *Sham v. Hyannis Heritage House Hotel, Inc.*, 118 F.R.D. 24 (D.Mass.1987); *Mission Nat. Ins. Co. v. Lilly*, 112 F.R.D. 160, 164 (D.Minn.1986)—(collecting cases).

In order to determine whether documents should be accorded work product protection, the Court necessarily must consider the nature of the documents, the nature of the litigation, the relationship between the parties, and any other fact peculiar to the case. Involvement of an attorney is a highly relevant but not necessarily controlling factor. *Fine v. Bellefonte Underwriters Ins. Co.*, 91 F.R.D. 420 (S.D.N.Y.1981).

■ The specific fact situation of this case involves an insured's demand to inspect its insurance company's claims files in order to discover whether the insurance company acted in bad faith in refusing to pay or settle the claim. An insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate and make a decision with respect to claims made on it by its insured. *Mission Nat. Ins. Co. v. Lilly, supra; Western Nat. Bank v. Employers Ins. of Wausau*, 109 F.R.D. 55 (D.Colo. 1985); *Fine v. Bellefonte Underwriters Ins. Co., supra*, at 422.

When the party seeking the work product does not have a special relationship with the insurer, different considerations may apply. For example, in investigations of an accident, because of potential claims by the third party against the insured, the possibility of litigation might arise at an earlier time. However, when the claim is made by its insured, an insurance company cannot in good faith contend that there is a reasonable possibility of litigation with respect to every claim submitted to it. In order to sell its products, insurance companies usually emphasize the fact that their policies will provide protection to their clients. It cannot be fairly argued that insurance companies provide security and protection by regarding every claim submitted to them as a likely prospect for litigation with the insured. Certainly, the instant defendant has not produced any proof that it sells its policies to clients on such a basis.

■ Because an insurance company has a duty in the ordinary course of business to investigate and evaluate claims made by its insureds, the claims files containing such documents usually cannot be entitled to work product protection. Normally, only after the insurance company makes a decision with respect to the claim, will it be possible for there to arise a reasonable threat of litigation so that information gathered thereafter might be said to be acquired in anticipation of litigation.[4] *APL v. Aetna Cas. & Sur. Co.*, 91 F.R.D. 10 (D.Md.1980)—(fidelity policy). This is not to say that the threat of litigation may never arise at an earlier time. However, if the insurer argues it acted in anticipation of litigation before it formally denied the claim, it bears the burden of persuasion by presenting specific evidentiary proof of objective facts demonstrating a resolve to litigate. *See Binks Mfg. Co. v. Nat. Presto Industries, Inc., supra*, at 1119 (objective facts demonstrating identifiable resolve); *Hydramar, Inc. v. General Dynamics Corp.*, 115 F.R.D. 147 (E.D.Pa.1986)—(without proof, it is reasonable to assume that litigation is not anticipated from negotiations until receipt of a specific threat).

■ In the instant case, defendant elected to meet its burden by delivering the claims files to the Court for an *in camera*

---

**4.** Even after a claim is denied, reports of investigations filed thereafter which contain prior investigations or evaluations, or are merely a continuation of the initial routine investigation, may not be labelled as work product. *APL Corp. v. Aetna Cas. & Sur. Co.*, 91 F.R.D. 10 (D.Md.1980).

inspection. Submitting a voluminous batch of documents for *in camera* review does not satisfy a proponent's burden of establishing that some or all of the documents deserve work product protection. The proponent cannot shift its burden to the Court by expecting the Court to review each document of a thick file. *See Kelchner v. International Playtex, Inc.*, 116 F.R.D. 469, 472 (M.D.Pa.1987). In cases involving large numbers of documents or where the nature of the document will not likely be readily apparent on its face to the uninitiated observer, the proponent of work product protection must present *in camera* matter to the Court in a reviewable form such as in a "Vaughn Index" which itemizes each document, provides a factual summary of its content and justification for withholding it. *Delaney, Migdail & Young, Chartered v. I.R.S.*, 826 F.2d 124, 128 (D.C.Cir.1987). In addition, claims that litigation became a realistic possibility at a certain time will normally have to be supported by affidavits which give specific factual detail for that conclusion. *Taroli v. General Elec. Co.*, 114 F.R.D. 97 (N.D.Ind.1987). In the instant case, this was not done and, therefore, the Court has no factual basis for concluding that any document in either claims files would be entitled to work product protection.

Turning to those facts which are before the Court, from all that appears, defendant never arrived at or issued a formal decision with respect to the Hargroves claim. *See, e.g., Fine v. Bellefonte Underwriters Ins. Co., supra.* Even after plaintiff had hired an attorney,[5] if there were negotiations or letters, the Court cannot find where defendant ever formally resolved the matter. When plaintiff went into bankruptcy, a bankruptcy attorney took over the case and made a demand. In response, defendant tendered its policy limits. Under these circumstances, the tendering of the policy limits constitutes the final decision of the insurance company. This satisfied the duty to investigate and evaluate the claim which the insurer owed to its insured. Therefore, all documents in the claims files prepared or obtained prior to defendant's tendering the policy limits are not entitled to work product protection vis-a-vis the insured.[6] As to any documents which were generated after defendant tendered its policy limits, defendant has the burden of establishing they are entitled to protection. Should defendant wish to withhold them, it shall briefly describe to plaintiff the general nature of each withheld document. Thereafter, plaintiff may challenge the decision by filing a motion.

By virtue of the above ruling, the Court rejects plaintiff's assertion of entitlement to the entire claims files, including work product consisting of the attorney's or agent's mental impression or opinions. Plaintiff argues that by virtue of the nature of this suit that it has demonstrated a substantial need for this work product material in order to prepare its case, and the inability, without undue hardship, to obtain the substantial equivalent by other means. Fed.R.Civ.P. 26(b)(3).

A case involving bad faith failure to settle requires plaintiff to know the substance of the investigation, the information available and used to make a decision, and the evaluations and advice relied upon for the decision. *In re Bergeson*, 112 F.R.D. 692 (D.Mont.1986); *Bourget v. Government Employees Insurance Company*, 48 F.R.D. 29 (D.Conn.1969). The insurer will possess all of this relevant information and its claims files will likely be the sole or primary source of the information. *Mission Nat. Ins. Co. v. Lilly, supra.* Notwithstanding, as a consequence of the Court's ruling as to what constitutes work product, the insured will not likely be able to show a substantial need for the entire claims file, including any work product material. *Compare and contrast In re*

---

5. Litigation cannot be said to be reasonably anticipated by the insurer merely because the insured is represented by an attorney. *Fann v. Giant Food, Inc.*, 115 F.R.D. 593, 596 (D.D.C. 1987); *Taroli v. General Elec. Co.*, 114 F.R.D. 97 (N.D.Ind.1987).

6. The Court finds that plaintiff is entitled to both files in order to see if defendant's explanation for different treatment of the larger claim is pretextual.

*Bergeson, supra,* and *Mission Nat. Ins. Co. v. Lilly, supra.* The Court has determined that where an insured files a claim on its insurer, the insurer does not usually generate work product material until the claim is paid or denied—or, as in this case, the policy limits tendered. Therefore, the non-work product material should constitute all of the information sufficient for plaintiff to prove its claim. The Court does not understand why there would be any significant information generated after that time, and plaintiff has not explained otherwise, much less demonstrated a need for it.[7] Thus, plaintiff's request for the entire claims files is denied and defendant shall produce the files in the manner previously described.

IT IS THEREFORE ORDERED that plaintiff's motion to compel the production of documents and/or the Walker and Hargroves claims files is granted as more specifically described in the body of this Order. Defendant shall produce such documents forthwith.

IT IS FURTHER ORDERED that plaintiff's motion for costs and attorney's fees is denied.

---

**7.** There is another reason for denying plaintiff "opinion" work product. Plaintiff claims that in litigation over bad faith failure to settle the insurance claim, the insured has a substantial need for the entire claims file even with respect to the opinions of defendant's attorneys or advisors, citing *Reavis v. Metro. Property & Liability Ins. Co.,* 117 F.R.D. 160 (S.D.Cal.1987). *See also Western Nat. Bank v. Employers Ins. of Wausau,* 109 F.R.D. 55 (D.Colo.1985). The Court rejects this view for the additional reason that the current law in this Circuit holds opinion work product to be near inviolable. In *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730 (4th Cir.1974), *cert. denied,* 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975), the Fourth Circuit held that no showing of relevance or substantial need or undue hardship would justify compelling disclosure of an attorney's mental impressions, conclusions,

opinions or legal theories. The *Reavis* court being of a different circuit was free to disregard Fourth Circuit law. This Court may not. *APL Corp. v. Aetna Cas. & Sur. Co., supra,* at 14 n. 2. *See also Mission Nat. Ins. Co. v. Lilly,* 112 F.R.D. 160 (D.Minn.1986).

Because plaintiff has failed to make a showing of need for material generated after the claims decision was rendered, the Court also need not explore whether opinion work product must be produced when a party relies on advice of counsel for its defense, *see Coleco Industries, Inc. v. Universal City Studios,* 110 F.R.D. 688, 691 (S.D.N.Y.1986), or alleges the crime, fraud and tort exception to work product protection, *but see Parkway Gallery v. Kittinger/Pennsylvania H. Group,* 116 F.R.D. 46, 52 n. 3 (M.D.N.C. 1987)—(unclear whether Fourth Circuit will permit such an exception).