HYDRAMAR, INC.

v.

GENERAL DYNAMICS
CORPORATION

v.

HYDRAMAR, INC. and George
Andrew Hlatky.

Civ. A. No. 85–1788.

United States District Court,
E.D. Pennsylvania.

Sept. 22, 1986.

Peter S. Clark, Thomas P. Preston, Philadelphia, Pa., for plaintiff.

Paul D. Moore, Paul W. Gromer, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

HANNUM, Senior District Judge.

This diversity action arises out of a Purchase Order Agreement entered into by the parties whereby, plaintiff Hydramar, Inc. [hereinafter Hydramar] agreed to design and fabricate for defendant General Dynamics Corporation [hereinafter General Dynamics] certain parts to be used by defendant in a ship construction project.

As a direct result of schedule and design changes made by General Dynamics, Hydramar alleges that it incurred substantial additional costs not contemplated by or included in the contract in completing the production of the goods. Before and after Hydramar submitted a formal written claim to General Dynamics for the additional costs, the plaintiff further claims defendant assured Hydramar and Hydramar's creditors that Hydramar's claims would be settled promptly and fairly. Based on defendant's representations, plaintiff alleges that it continued to perform under the contract. Nevertheless, defendant allegedly refused to settle the claim reasonably, forcing plaintiff to file for bankruptcy and to incur damages over and above those directly resulting from General Dynamics' breach of contract.

The plaintiff alleges in its complaint actions against the defendant for breach of contract (Count I), fraud and misrepresentation (Count II), breach of duty to negotiate in good faith (Count III), interference with present and future business and contract relationships (Count IV), destruction of a business as a going concern (Count V), negligence (Count VI), and unfair and deceptive acts and practices (Count VII). Defendant denies these allegations by asserting, *inter alia,* that it was justified in its conduct and that at all times material to this litigation, it negotiated and dealt with Hydramar with the utmost good faith and fair dealing.

Presently pending before this Court are the following six discovery motions:

1. Plaintiff, Hydramar, Inc.'s Motion To Compel Discovery From Defendant, General Dynamics Corporation;

2. Motion Of Plaintiff, Hydramar, Inc. To Stay Discovery Pending A Ruling By This Court On The Motion Of Hydramar, Inc. To Compel Discovery;

3. Defendant-In-Counterclaim, George Andrew Hlatky's Motion To Stay Taking Deposition;

4. Defendant, General Dynamics Corporation's Motion To Compel Discovery And For Sanctions Against Plaintiff, Hydramar, Inc. And Defendant-In-Counterclaim, George Andrew Hlatky;

5. Motion Of General Dynamics Corporation For Leave To File Reply Memorandum; and

6. Defendant, General Dynamics Corporation's Motion To Strike Hydramar, Inc.'s Reply Brief.

## I. *Plaintiff, Hydramar, Inc.'s Motion To Compel Discovery From Defendant General Dynamics Corporation*

Hydramar filed a motion to compel discovery by which it seeks information that bears on how General Dynamics handled plaintiff's January 21, 1983 claim to adjust equitably the contract price. Hydramar contends that information of this sort is essential both to a determination of whether General Dynamics' conduct was tortious as is alleged in Counts II—VII of plaintiff's complaint and to a determination of whether General Dynamics negotiated and dealt with Hydramar with the utmost good faith and fair dealing as is alleged in the defendant's answer to the plaintiff's complaint.

The defendant objects to the discovery of this type information on the ground that it constitutes "opinion" work product. Specifically, defendant contends that the requested information was prepared in anticipation of litigation and that discovery of this information will reveal defendant's trial strategy and related thoughts with respect to the breach of contract action alleged in Count I of plaintiff's complaint. General Dynamics has not only objected to answering interrogatories and refused to comply with requests for the production of documents on this basis, but has also interposed the work product objection to questions propounded by plaintiff's counsel to defendant's employees at depositions.

Hydramar seeks to compel defendant to answer interrogatories numbered 15 and 39 in plaintiff's first set of interrogatories, to comply with requests number 17 and 35 in plaintiff's first request for the production of documents, to comply with requests numbered 3 and 5 in plaintiff's second request for the production of documents and

to provide full and complete answers to the questions propounded at the depositions of Paul Pelletier, Leroy Bennett and James Muir, to which the defendant objected and instructed the deponent not to answer.

The burden of demonstrating that a document is protected as work product rests with the party asserting the doctrine. *Conoco Inc. v. United States Dept. of Justice,* 687 F.2d 724 (3d Cir.1982). In the present case, General Dynamics asserts that the documents and the information sought is protected from discovery because it is work product. Thus, General Dynamics has the burden of proving that the document and information they seek to keep from plaintiff is in fact work product.

To establish its assertion that the documents and the information plaintiff seeks are protected from discovery by virtue of the work product doctrine, defendant must show first that the materials were in fact prepared in anticipation of litigation. The mere fact that litigation did eventually ensue does not, by itself, cloak materials prepared by defendant's attorneys with the protection of the work product doctrine; the doctrine is not that broad. *Binks Manufacturing Company v. National Presto Industries, Inc.,* 709 F.2d 1109 (7th Cir. 1983).

The Third Circuit has stated that a document will be recognized as being prepared in anticipation of litigation if in light of the nature of the document and the factual situation in the particular case, it can fairly be said that the document was prepared or obtained *because* of the prospect of litigation. *In re Grand Jury Proceedings (FMC),* 604 F.2d 798, 803 (3d Cir. 1979) (emphasis added); *see In re Grand Jury Investigation,* 599 F.2d 1224, 1229 (3d Cir.1979). *Cf. In re Grand Jury Investigation (Sturgis),* 412 F.Supp. 943, 948 (E.D.Pa.1976) (Advising a client about matters which may or even likely will ultimately come to litigation does not satisfy the "in anticipation of" standard).[1]

---

**1.** Unless General Dynamics shows that each document or piece of information it claims is    protected from discovery by virtue of the work product doctrine meets the "in anticipation of"

**150**

The Court finds from the papers submitted by the parties that the defendant has failed to meet its burden of proving that documents generated prior to May 13, 1983 that plaintiff seeks to discover were prepared or obtained because of the prospect of litigation.[2]

Significant to the Court in reaching its conclusion were the fact that the January 21, 1983 letter from Hydramar's president George Andrew Hlatky to General Dynamics' Quincy Shipbuilding Division informed defendant that design and production schedule changes made by defendant forced plaintiff to incur increased production and labor costs in order to continue the performance of the contract in a competent and timely fashion. In the letter the plaintiff sought compensation from defendant for these increased costs but nowhere threatened to stop performance or to sue the defendant.

Similarly, a letter dated March 11, 1983, sent from plaintiff to defendant states that "[t]his letter is presented to provide Gener-

al Dynamics, Quincy with itemized list breakdowns in our request for adjustment to the above referenced purchase order."

That plaintiff at this point in time was seeking only to adjust equitably the contract price is further exemplified in the following passage of the same letter:

In our meeting of March 6, 1983, all of the items were discussed. We have accepted certain of your comments and have deleted items for which we have contractual obligations even though our costs were significantly higher than anticipated.

The March 11, 1983 letter like the January 21, 1983 letter nowhere threatens litigation or nonperformance; it merely expresses Hydramar's hope that the information they provided to defendant was "sufficient to settle this matter ...".

Most significantly, General Dynamics admits at page eleven of its Memorandum in Opposition to Hydramar, Inc.'s Motion to Compel Discovery that Hydramar did not threaten litigation until May 13, 1983.[3]

standard, this Court need not rule on whether the claimed material is actually work product or is "opinion" work product, *see Bogosian v. Gulf Oil Corp.*, 738 F.2d 587 (3d Cir.1984); *Sporck v. Peil*, 759 F.2d 312 (3d Cir.), cert. denied, — U.S. —, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985), nor need this Court rule on whether work product or "opinion" work product protection extends to a party's deposition testimony, *see* 8 Wright & Miller, Federal Practice and Procedure § 2023, at 194 (1970). *Cf. Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680 (E.D.Pa.1986); *see Ford v. Phillips Electronics Instruments Co.*, 82 F.R.D. 359 (E.D.Pa.1979). The Court similarly need not rule on plaintiff's contention that where an attorney's trial preparation materials are put directly at issue in a case either by a plaintiff's complaint or by a defendant's answer, they are not protected by either the work product or "opinion" work product doctrines.

2. Defendant, General Dynamics submits evidence that is both insufficient and unpersuasive to the Court on such issues as when a document or documents purporting to analyze plaintiff's January 21, 1983 claim were prepared, why the document or documents purporting to analyze plaintiff's January 21, 1983 claim should be found to have been prepared or obtained because of the prospect of *this* or some other litigation, who directed that the document or documents be prepared, who prepared the document or documents and what relationship, if

any exists, the document or documents have to the present litigation.

Instead, defendant seeks blanket work product protection for *any* document purporting to analyze plaintiff's January 21, 1983 claim by making the conclusory allegations that plaintiff's "actual claim for specific money damages, plus Hydramar's threat to sue, plus the existence of litigation surrounding the Hydramar purchase order, all combine to make it clear that General Dynamics' analyses were 'prepared in anticipation of litigation'...." As to documents prepared prior to May 13, 1983, the Court rejects General Dynamics' arguments as lacking a proper factual predicate.

3. A party, such as General Dynamics, does not have to be threatened with litigation by a plaintiff, such as Hydramar, before the documents it prepares could be considered prepared "in anticipation of" litigation. Such a construction of the "in anticipation of" standard would narrow the reach of the work product doctrine beyond that permitted by current law. However, this Court, under the particular factual circumstances of the case before it and upon review of the papers submitted to it by the respective parties merely holds that the defendant, General Dynamics has not submitted sufficient evidence, when that evidence is viewed alongside the evidence submitted by the plaintiff, Hydramar, to warrant a finding that the documents to which

General Dynamics involvement in the Farrell Ocean Services, Inc. ("Farrell") litigation does not change matters. Farrell, according to the defendant's Memorandum in Opposition to Hydramar, Inc.'s Motion to Compel Discovery, commenced on February 7, 1983 a civil action against plaintiff for plaintiff's failure to pay Farrell for transporting a shipment of hatch covers to General Dynamics. General Dynamics was joined as a trustee in that action and Farrell obtained an attachment on trustee process in the amount of $32,000.00.

The existence of litigation surrounding the Hydramar purchase order in no way suggested that Hydramar would institute a law suit against General Dynamics for breach of contract seeking money damages over and above the consideration agreed upon in the purchase order. The most that General Dynamics could gather from the Farrell suit would be that Hydramar might have some difficulty in performing their duties under the contract. However, the correspondence and moving papers submitted by the parties to this Court establishes that Hydramar was still performing faithfully its contractual duties on May 13, 1983; the date on which the defendant asserts that Hydramar first threatened it with litigation.

■ Because the defendant has failed to show that the documents generated prior to May 13, 1983 were prepared because of the prospect of litigation, the defendant can not claim that this information is protected from discovery under the work product doctrine. Thus, the Court holds that all documents generated and all testimony based on documents generated prior to May 13, 1983 by the defendant is discoverable by the plaintiff if the information otherwise satisfies Fed.R.Civ.P. 26.[4]

■ As to documents prepared by General Dynamics on or after May 13, 1986, the Court is not in a position to say that any document or testimony based upon any such document was prepared in anticipation of litigation from the papers already submitted by the parties.[5] Nor is this Court in a position to pass upon defendant's claim that any such document or testimony based upon any such document contains work product or "opinion" work product without actually viewing them. Therefore, the defendant has twenty (20) days from the entry of the attached Order to submit under seal any documents or information based upon any such document generated on or subsequent to May 13, 1986, that it claims is protected from discovery by virtue of the work product doctrine to this Court for *in camera* inspection, following the guidelines established below:

1. The defendant shall submit under seal to the Court for an *in camera* inspection any documents requested by the plaintiff which it contends is not discoverable on work product grounds, pro-

they claim work product protection were prepared "in anticipation of" litigation prior to May 13, 1986. As to documents prepared by General Dynamics on or after May 13, 1986, this Court will decide, upon an *in camera* inspection, with the first threat of litigation being a significant factor, whether the defendant has established that the documents were prepared in anticipation of litigation.

4. This Court grants the plaintiff's motion to compel defendant to provide full and complete answers to the questions propounded at the depositions of Paul Pelletier, Leroy Bennett and James Muir to which the defendant objected and instructed the deponent not to answer to the extent that these answers are based upon documents or are contained in documents prepared by the defendant or by a representative of the defendant prior to May 13, 1983. However,

the Court does not direct the defendant to do so in the Order which accompanies this Memorandum. Instead, this Court will first complete an *in camera* inspection of full and complete answers to questions propounded at the depositions of the above named persons that are based upon documents or are contained in documents prepared by the defendant or his representative on or after May 13, 1983. Then, this Court will appropriately Order the depositions of Paul Pelletier, Leroy Bennett and James Muir. This procedure will avoid the possibility of two court ordered depositions.

5. As noted earlier, the plaintiff's alleged first threat to sue the defendant on May 13, 1986, will be considered when this Court rules on whether or not documents generated on or after May 13, 1986, were prepared by defendant in anticipation of litigation.

posed answers to interrogatories propounded by the plaintiff but objected to on work product grounds, and full and complete answers to questions propounded at the depositions of Paul Pelletier, Leroy Bennett and James Muir, to which the defendant objected and instructed the deponent not to answer on work product grounds; [6]

2. The defendant shall submit under seal a memorandum which describes why the material submitted to the Court in paragraph one, above, is work product or "opinion" work product. The Court suggests that the memorandum include the following:

A. the names of all persons (e.g. the defendant's attorneys, consultants, sureties, indemnitors, insurers, agents or other representatives) who participated in the creation and/or preparation:

(1) of the documents requested by the plaintiff that were withheld by the defendant on work product grounds;

(2) of the document or documents that *form the basis:*

(a) of a proposed answer to an interrogatory objected to by the defendant on work product grounds, *or*

(b) of a full and complete answer to a deposition question objected to on work product grounds.

B. the specific role all such persons took in the preparation and creation of the documents described in 2(A) (including 2(A)(1), 2(A)(2)(a) and 2(A)(2)(b).

C. the specific date or dates upon which the documents described in 2(A) were prepared and/or created.

D. the specific place or places where the documents described in 2(A) were prepared and/or created.

E. if an attorney participated in the preparation and/or creation of documents described in 2(A), a statement of his position, his relationship to the defendant and his relationship to the litigation:

(1) at the time the document was created and/or prepared;

(2) at the time the present litigation was commenced; *and*

(3) at the present time.

## II. *Motion of Plaintiff, Hydramar, Inc. To Stay Discovery Pending A Ruling By This Court On The Motion Of Hydramar, Inc. To Compel Discovery*

■ This motion was filed by the plaintiff contemporaneously with its motion to compel discovery, which was considered above. After considering the plaintiffs' arguments,[7] this Court will deny the motion

---

**6.** In *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 595 (3d Cir.1984), the United States Court of Appeals for the Third Circuit instructed litigants that:

> We do not generally encourage extensive *in camera* examination of documents by the district court. The district courts are overburdened with discovery matters, and most disputed issues are *capable of resolution between attorneys if a serious attempt is made to do so.* On the other hand, in the few situations where public policy requires protection of portions of a document, *in camera* inspection by the trial judge or magistrate is unavoidable. Documents claimed to contain legal theories fall within that small class of documents requiring *in camera* examination, if the adversary is not satisfied with the attorney's claim of total work product protection.

*Id.* at 595 (emphasis supplied). The Court notes that a serious attempt by counsel to resolve the discovery dispute before the Court may obviate the costly and time consuming effort of preparing the materials requested for *in camera* inspection.

**7.** Hydramar argues principally that, absent a stay, Hydramar is faced with the undesireable alternative of raising what it considers to be an unfounded objection to General Dynamics' discovery. Moreover, Hydramar continues that "[i]f [it] does not do so, and this Court denies [plaintiff's] Motion To Compel Discovery, Hydramar will be deemed to have waived all entitlement to work product protection." *See* plaintiff's Memorandum of Law In Support of Hydramar, Inc.'s Motion To Stay Discovery Pending A Ruling By This Court on Hydramar, Inc.'s Motion To Compel Discovery, at 2–3.

This Court is unimpressed with plaintiff's argument. First, as the plaintiff itself recognizes, it is unseemly and unprofessional to raise "unfounded objection[s]" during the discovery process. Second, this Court trusts that plaintiff's counsel, at a deposition or otherwise, will interpose all necessary and good faith work product objections to protect its client's interests.

of plaintiff, Hydramar, Inc. to stay discovery pending a ruling by this court on the motion of Hydramar, Inc. to compel discovery.[8]

Under the Federal Rules of Civil Procedure, General Dynamics may seek discovery from Hydramar in an orderly manner. If in this process Hydramar believes in good faith that a document or tangible thing is immune from discovery because it is work product, it can object to the discovery of such document or tangible thing at the appropriate time. Fed.R.Civ.P. 26(b)(3).

A party does not have a right to discover the other party's case entirely before it will subject itself to the discovery process. *See* Fed.R.Civ.P. 26(d). Should Hydramar feel the need to supplement responses it has made to the defendant in the course of the discovery process or to request additional discovery from the defendant that is reasonable and not unduly burdensome, these avenues are available to it. *See* Fed.R. Civ.P. 26(b); Fed.R.Civ.P. 26(e).

III. *Defendant, General Dynamics Corporation's Motion To Compel Discovery And For Sanctions*

General Dynamics Corporation seeks in its motion to compel discovery and for sanctions an Order compelling both Hydramar and defendant-in-counterclaim George Hlatky to appear for their depositions last scheduled for June 24, 1986 and entering sanctions against Hydramar's counsel, Hydramar and George Hlatky for their willful and unwarranted failure to provide discovery.

On April 18, 1986, General Dynamics noticed the deposition of Hydramar pursuant to Federal Rule of Civil Procedure 30(b)(6). Hydramar designated George Hlatky to testify on its behalf. The parties agreed eventually that the deposition would commence in Philadelphia on June 24, 1986 and would continue on June 25, 1986. Despite the persistent effort of defendant's counsel, the scheduled June, 1986 deposition of George Hlatky did not take place.

Hydramar advances one principal argument in opposition to General Dynamics' Motion To Compel George Hlatky to appear for deposition. This argument is without merit.

■ Hydramar asserts that it filed a motion to stay discovery with this Court on May 19, 1986 and that it wanted this Court to have a chance to rule upon this motion before the scheduled deposition. A deposition, properly noticed under Fed.R.Civ.P. 30(b), such as the one before this Court, must be attended, however, unless the deponent obtains a court order relieving it of this obligation. Thus, Hydramar's mere filing of the motion to stay discovery was not sufficient to relieve it of its duty to produce its designee, George Hlatky, to be deposed.[9] *See King v. Fidelity Nat. Bank of Baton Rouge*, 712 F.2d 188, 191 (5th Cir.1983), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984); *Pioche Mines Consolidated, Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir.1964), *cert. denied*, 380 U.S. 956, 85 S.Ct. 1081, 1082, 13 L.Ed.2d 972 (1965).

■ However, under the particular circumstances of this case, where many of Hydramar's most important discovery requests have been objected to by General Dynamics on work product grounds, Hydramar was substantially justified in wanting to give this Court an opportunity to rule on its recently filed motion to stay discovery before the Hlatky deposition. Thus, this Court denies General Dynamics' motion for reasonable expenses, including attorney's fees, caused by the failure of the

**8.** This Court denies the defendant-in-counterclaim Motion To Stay Taking Deposition. The defendant-in-counterclaim raises arguments that are identical in all respects to the arguments raised by the plaintiff in moving to stay discovery. Therefore, this Court's reasons for denying the plaintiff's motion to stay discovery are equally applicable to denying the motion of Mr. George Hlatky, defendant-in-counterclaim.

**9.** This Court's ruling applies as well to George Hlatky, in his capacity as a defendant-in-counterclaim in this action.

Hlatky deposition to take place as scheduled.[10]

■ This Court further finds that Hydramar, Hydramar's counsel and George Hlatky, in his capacity as defendant-in-counterclaim in this action were not willful in their failure to provide General Dynamics with discovery. In particular, this Court finds that defendant was adequately informed by plaintiff's counsel that George Hlatky would not appear at the deposition scheduled for June 24, 1986 in Philadelphia. Accordingly, the Court denies the defendant's motion for discovery sanctions.

This Court finds that as early as May 16, 1986, plaintiff's counsel informed General Dynamics by telephone that Hydramar intended to file a motion to stay "all discovery directed at Hydramar, and that the deposition of Mr. Hlatky [would be] subject to the pendency of the Stay Motion," unless General Dynamics was willing to withdraw or modify its stance on its numerous work product objections. *See* Response of Plaintiff to Defendant General Dynamics' Motion to Compel, at 5–7; *id.* at Exhibit A. This position was again communicated to defendant by plaintiff's counsel in a letter dated June 3, 1986. *Id.* at Exhibit A, ¶ 4. Thus, this Court rejects defendant's assertion that their fortuitous phone call alone to Hydramar's counsel on June 20, 1986 saved them from coming to Philadelphia to appear at a deposition that was not to take place.[11]

IV. *Defendant, General Dynamics Corporation's Motion To Strike Hydramar, Inc.'s Reply Brief And The Motion Of General Dynamics Corporation For Leave To File Reply Memorandum*

■ The Court notes that it has considered the points raised in defendant's motion for leave to file reply memorandum. However, because the Court has seen fit to rule on defendant's motion to compel discovery and for sanctions in the absence of such a reply memorandum, the Court will deny the defendant's motion for leave to file a reply memorandum as being moot.

The Court denies General Dynamics' motion to strike Hydramar, Inc.'s reply brief to General Dynamics' memorandum in opposition to Hydramar's motion to compel discovery. However, the Court reminds plaintiff's counsel that under Local Rule 20(c), reply briefs are not permitted without leave of court.

An appropriate Order follows.

## ORDER

AND NOW, this 22nd day of September, 1986, upon consideration of plaintiff's motion to stay discovery pending a ruling by this Court on the motion of plaintiff to compel discovery (Docket Entry No. 18), plaintiff's motion to compel discovery (Docket Entry No. 19), defendant's opposition to motion of plaintiff to stay discovery (Docket Entry No. 20), defendant's opposition to plaintiff's motion to compel discovery (Docket Entry No. 21), defendant's memorandum in opposition to plaintiff's motion to compel discovery (Docket Entry No. 23), defendant's memorandum in opposition to plaintiff's motion to stay discovery (Docket Entry No. 24), defendant-in-counterclaim's motion to stay taking of deposition (Docket Entry No. 29), plaintiff's response to defendant's memorandum in opposition to plaintiff's motion to stay discovery (Docket Entry No. 30), defendant's motion to compel discovery and for sanctions (Docket Entry No. 32), defendant's

---

**10.** The Court suggests that plaintiff might in the future apply to this Court for an Order postponing the time of a deposition until his motion can be heard.

**11.** If both the May 16, 1986 phone conversation and the letter dated June 3, 1986 referred to in the text did not convey to General Dynamics that the June 24, 1986 deposition was not to go forward as planned, it surely put the defendant on notice of the same. Moreover, Hydramar's telecopied letter sent to the defendant on June 20, 1986 promptly corrected any misapprehensions that defendant might have had concerning the June 24, 1986 deposition date. This response is further evidence of Hydramar's good faith efforts in trying to resolve these time consuming discovery disputes.

opposition to motion of defendant-in-counterclaim to stay taking of deposition (Docket Entry No. 33), plaintiff's response to defendant's memorandum in opposition to plaintiff's motion to compel discovery (Docket Entry No. 35), response of plaintiff to defendant's motion to compel (Docket Entry No. 36), defendant's motion to strike plaintiff's reply brief (Docket Entry No. 37), defendant's motion for leave to file reply memorandum (Docket Entry No. 38), plaintiff's response to defendant's motion for leave to file reply memorandum (Docket Entry No. 39), and plaintiff's response to defendant's motion to strike plaintiff's reply brief (Docket Entry No. 40), and in accordance with the foregoing Memorandum, it is hereby ORDERED that plaintiff's motion to compel discovery is GRANTED in part and is taken under advisement in part pending the submission of materials under seal by the defendant for an *in camera* inspection. It is further ORDERED that defendant:

(1) comply with requests numbered 17 and 35 in plaintiff's first request for the production of documents.

(2) comply with requests numbered 3 and 5 in plaintiff's second request for the production of documents,

to the extent that the above referenced requests ask for documents prepared by the defendant or by a representative of the defendant prior to May 13, 1983.

It is further ORDERED that defendant answer interrogatories numbered 15 and 30 in plaintiff's first set of interrogatories to the extent that these interrogatories ask for answers based upon documents or ask for answers contained in documents prepared by the defendant or by a representative of the defendant prior to May 13, 1983.

It is further ORDERED that the defendant has twenty (20) days from the entry date of this ORDER to submit under seal any document or information based upon any document prepared by the defendant or by a representative of the defendant on or after May 13, 1983, that defendant claims is protected from discovery by virtue of the work product doctrine and that could form the basis of an answer to interrogatories numbered 15 and 30 in plaintiff's first set of interrogatories or that could form the basis of a full and complete answer to questions propounded at the depositions of Paul Pelletier, Leroy Bennett and James Muir, to which the defendant objected and instructed the deponent not to answer or that could satisfy requests numbered 17 and 35 in plaintiff's first request for the production of documents or that could satisfy requests numbered 3 and 5 in plaintiff's second request for the production of documents, to this Court for an *in camera* inspection following the guidelines set forth for such an *in camera* inspection in the foregoing Memorandum.

It is further ORDERED that plaintiff's motion to stay discovery pending a ruling by this Court on the motion of plaintiff to compel discovery is DENIED.

It is further ORDERED that defendant-in-counterclaim's motion to stay taking of deposition is DENIED.

It is further ORDERED that defendant's motion to compel discovery and for sanctions is GRANTED in part and is DENIED in part.

It is further ORDERED that the plaintiff and the defendant-in-counterclaim appear at a time reasonable to the defendant at the place of their last scheduled deposition to be deposed within fourteen (14) days after the entry of this Order.

It is further ORDERED that the defendant's motions for reasonable expenses and for sanctions are DENIED.

It is further ORDERED that defendant's motion for leave to file a reply memorandum is DENIED.

It is further ORDERED that defendant's motion to strike plaintiff's reply brief is DENIED.